```
                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MARYLAND

                              :
ERIC LEWIS
                              :

     v.                       :   Civil Action No. DKC 2004-2687
                                  Criminal Case No. DKC 2002-077
                              :
UNITED STATES OF AMERICA
                              :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is the motion of *pro se* Petitioner, Eric Lewis, to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. (Paper 155). For the reasons that follow, the court shall deny Petitioner's § 2255 motion petition.

**I. Background**

On September 23, 2002, Petitioner pleaded guilty to distribution of cocaine in violation of 21 U.S.C. § 841. The parties signed a written plea agreement that Petitioner was guilty of count seven of the superceding indictment that he knowingly, intentionally and unlawfully distributed five grams or more of cocaine base or crack. That charge carried a maximum of forty years imprisonment. The other charges in the indictment were dropped as part of the plea agreement. Petitioner was sentenced to ninety-seven months imprisonment and to five years of supervised release.

During Petitioner's plea colloquy, the court thoroughly reviewed the plea agreement with Petitioner. In particular, the

court informed Petitioner that he had "the absolute right to plead not guilty" and asked if he understood that "no one can make you come in here and enter a guilty plea." (Paper 172, Ex. B, Re-arraignment/Guilty Plea Trans., at 6). The court also informed Petitioner that he "need[ed] to understand that it is possible that [the court] will not agree with all of the proposed guideline findings and stipulations" and that Petitioner would not "be allo[we]d to withdraw your guilty plea if that should happen." (*Id*. at 8-9). The court also informed Petitioner that he was "not going to be allowed to withdraw [his] guilty plea no matter what decisions [the court] ma[de] with regard to the guidelines." *(Id*. at 18).

The court took lengths to clarify that Petitioner was indeed attempting to plead guilty and that he was doing so of his own volition. The court obtained an affirmative response from Petitioner when it queried if he "agree[d] that overall [he was] responsible, either because [he] personally handled [cocaine] or [] stored it or [] assisted someone else, in distributing at least 50 grams of crack." (*Id*. at 16). The Court also confirmed with Petitioner that he was not "threatened in any way" in connection with his plea. (*Id*. at 21).

The court also reviewed the issue of a potential two level reduction in sentencing if Petitioner complied with the fifth requirement of his plea agreement under the so-called "safety valve

provision" of U.S. Sentencing Guideline §5C1.2(a)(1)-(5). The court informed Petitioner that if he did something that the government considered an obstruction of justice or if he failed to accept responsibility for his conduct, the government would inform the court and request that the court move higher in the guidelines as a result. (Paper 172, Ex. B, Re-arraignment/Guilty Plea Trans., at 18-19).

Finally the court discussed Petitioner's interactions with his trial counsel with him. Petitioner informed the court that his trial counsel and he had reviewed the plea agreement "at least about 4, 5 times, just to go over it, make sure that my head is straight on what I'm pleading for. . . ." (*Id*. at 21). Petitioner also responded affirmatively when the court asked him whether his trial counsel "always had the time that [Petitioner] thought was necessary to talk with [him] about this case," as well as to questions about whether he was satisfied with his counsel's performance and whether his counsel had answered all of his questions. (*Id*. at 21).

The Government and the Petitioner agreed to a statement of facts, including that Petitioner "distributed 5 grams or more of a mixture or substance containing a detectable amount of cocaine base" and that "[a]t least 50 but not more than 150 grams of cocaine base were involved in the offense." (Paper 172, Ex. A, Plea Agreement ¶¶ 2, 6). Petitioner signed the plea agreement

3

affirming that the facts presented by the Government therein were true, and that he was in fact guilty of the charged offense. (*Id.* at 1, 7). Petitioner also indicated that he understood the plea agreement, including the waiver of appeal rights other than the right to appeal if the court departed from the sentence guideline range or exceeded the statutory maximum sentence. (*Id.* at 5-6, 7).

Petitioner filed the pending motion to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255 on August 16, 2004. (Paper 155). In that motion, Petitioner raises the following four claims: 1) that his sentence was unlawfully enhanced beyond the conceded factual basis in violation of his Sixth Amendment right to a trial by jury per *Blakely v. Washington*, 542 U.S. 296 (2004); 2) that his guilty plea was not voluntary; 3) that he received ineffective assistance of counsel in advance of his plea; and 4) that he received ineffective assistance of counsel in preparing his appeal.

On August 30, 2004, the court entered an Order directing the United States to show cause why the motion to vacate should not be granted. (Paper 157). The Government filed its response in opposition to Petitioner's § 2255 motion on December 13, 2004. (Paper 172). In that document, the Government argued that Petitioner's claims consist primarily of an argument that he received ineffective assistance of counsel on appeal. (*Id.* at 4). The Government asserted that Petitioner's ineffective assistance

claim must fail because it establishes neither deficient performance nor actual prejudice as required for a successful ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984). (*Id.* at 4-8). Specifically, the government argues that: 1) Petitioner was not entitled to appeal his sentence because he waived his right to do so; 2) Petitioner's appellate counsel was not deficient in failing to review and provide Petitioner with a copy of his trial transcript because appellate counsel did in fact provide Petitioner with a copy; and 3) Petitioner's complaint that his appellate counsel did not keep him adequately informed of the status of his case is not in accord with the facts. (*Id.* at 7).[1]

**II. Standard of Review**

Title 28 U.S.C. § 2255 requires a Petitioner asserting constitutional error to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." On the other hand, "[t]he scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a

---

[1] The United States' response does not directly respond to Petitioner's other arguments.

fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" *United States v. Mikalajunas*, 186 F.3d 490, 495-96 (4th Cir. 1999) (internal citations omitted). While a *pro se* movant is entitled to have his arguments reviewed with appropriate consideration, *see Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978), if the § 2255 motion, along with the files and records of the case, conclusively shows that he is entitled to no relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. 28 U.S.C. § 2255. Furthermore, only issues that have not been waived may be raised:

> In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel. And, in order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence.

*Mikalajunas*, 186 F.3d at 492-93.

**III. Analysis**

A conviction and sentence based on a guilty plea can only be collaterally attacked on relatively narrow grounds, including that

6

the plea was not voluntary, that the Petitioner received ineffective assistance of counsel, or that the court clearly lacked authority to impose the sentence.

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack. There are exceptions where on the face of the record the court had no power to enter the conviction or impose the sentence.

*United States v. Broce,* 488 U.S. 563, 569 (1989).

Petitioner must have more than mere allegations to create factual disputes with the sworn testimony he offered in his plea proceeding because "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

**1. Enhanced Sentence and *Blakely v. Washington***

Petitioner argues that his sentence constitutes an unlawful sentencing enhancement under *Blakely v. Washington*. Specifically, Petitioner claims that he never admitted having sold more than 5

grams of cocaine base. He asserts that the proper guideline base offense level was 26, and that a two point reduction for acceptance of responsibility would result in an adjusted level to 24. Instead, the court used the base offense of 32, which was recommended in the presentence report and stipulated to in the written plea agreement. After the two level reduction for acceptance of responsibility, the adjusted offense level was 30.

The record is replete with evidence that establishes that Petitioner pleaded guilty to distributing 5 grams or more of cocaine base. *See* Paper 172, Ex. A, Plea Agreement ¶ 1, 2; *see also* Paper 172, Ex. B, Re-arraignment/Guilty Plea Trans., at 5, 15). The written statement of facts that is part of the agreement Petitioner signed recounted controlled buys of 54.1 grams of crack. While Petitioner was not willing at the plea colloquy to agree to all of the specific dates or amounts, he did admit ultimately "that overall [he was] responsible, either because [he] personally handled it or [] stored it or [] assisted someone else, in distributing at least 50 grams of crack." *Id.* at 16. Accordingly, Petitioner's claim that he "never admitted to selling more than 5 grams of cocaine base" fails.

Petitioner was charged in count seven with distributing 5 grams or more of cocaine base, carrying a mandatory minimum sentence of five years, and a maximum of 40. *Blakely v.*

8

*Washington*, 542 U.S. 296 (2004), decided on June 24, 2004,[2] held that, under the Washington state sentencing law, the imposition of a sentence higher than the normally applicable range based on facts found by the sentencing judge, but neither admitted by the defendant nor found by a jury, violated a defendant's rights under the Sixth Amendment.  *Blakely* is inapposite where, as here, Petitioner was not sentenced in excess of the applicable statutory maximum.  At Petitioner's sentencing, the court did not rely on facts outside the record to sentence Petitioner to a sentence higher than the statutory maximum.  Rather, the court determined the guidelines based only on facts admitted by Petitioner, and found that Petitioner was not eligible for a two level reduction because he failed to meet the fifth requirement of the safety valve provision by not revealing "all he knows" about the charged offense and the court sentenced Petitioner to a term of imprisonment within the applicable guidelines.

---

[2] The Fourth Circuit held that *Blakely* is not available for retroactive application to § 2255 post-conviction relief movants in *Morris v. United States*, 429 F.3d 65 (4th Cir. 2005).  *Blakely* applies prospectively and only to those cases on direct appeal at the time of the Supreme Court's decisions.  *Id*. at 71-72.  Defendant's conviction might not have been final when *Blakely* was decided, so the court will determine whether Petitioner's claim falls within that decision.  On the other hand, Petitioner's conviction clearly was final when *United States v. Booker*, 543 U.S. 220 (2005), was decided. Accordingly, that opinion's holding that the mandatory application of the U.S. Sentencing Guidelines was unconstitutional does not apply to Petitioner.  *See Morris*, 429 F.3d 65.

**2. Voluntariness of Plea**

Next, Petitioner contends that his plea was not voluntary because he did not understand the consequences of pleading guilty and because the Assistant U.S. Attorney told him he would get a more stringent sentence if he did not plead guilty. He points to the interruption in the plea proceeding when Petitioner initially did not agree with the statement of facts included in the written plea agreement. He asserts that the prosecutor made some statement or promise to him in the hallway, which now should undermine the voluntariness of his plea.

The further discussion with the court is, however, fatal to this claim. Before accepting his plea, the court inquired whether "[o]ther than what's written down in this written plea agreement, has anybody made any promise to you to induce you to plead guilty?" Petitioner answered, no. Petitioner also informed the court that he was not "threatened [ ] in any way." (Paper 172, Ex. B, Re-arraignment/Guilty Plea Trans., at 21). Furthermore, Petitioner's plea agreement emphasizes that Petitioner "expressly understands that the Court is not a party to [the] agreement" between Petitioner and the Government as to the Government's recommended sentence. (Paper 172, Ex. A, Plea Agreement ¶ 9). At Petitioner's re-arraignment, the court took lengths to clarify that Petitioner was indeed attempting to plead guilty and that he was doing so of his own volition. Because the voluntariness of Petitioner's plea

10

is evident from the record and has not been undermined by any new evidence, Petitioner's second claim fails.

### 3. Ineffective Assistance of Counsel

Petitioner's third and fourth claims assert that he was denied the effective assistance of counsel. His third claim alleges that his trial counsel failed to sufficiently investigate the charges against him, did not spend adequate time discussing the case with him, failed to obtain a lab report, and failed to file a timely appeal. His fourth claim argues that he was denied the effective assistance of counsel on appeal because he believes that no one from the firm ever met with him and because he claims that they failed to send him some requested documents.

Claims of ineffective assistance of counsel may be raised for the first time on collateral review. *Massaro v. United States*, 538 U.S. 500, 504 (2003). In *Strickland v. Washington*, the Supreme Court established a two-prong test that a petitioner must satisfy to prevail on an ineffective assistance of counsel claim. 466 U.S. at 687. First, the petitioner must show that counsel's performance was deficient when measured against an objective standard of reasonableness. *Id*. at 687-688. Second, the petitioner must show that counsel's deficient performance prejudiced the defense, by depriving the petitioner of "a trial whose result is reliable." *Id*. at 687.

11

To establish the first prong, Petitioner must produce evidence that counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." *Id*. at 687. There is a presumption that counsel's actions are strategic trial decisions. *Id*. at 689. The court is thus highly deferential to counsel's decisions and reviews the challenged conduct in light of the totality of circumstances. *Id*. at 689-90.

As for the second prong, Petitioner must show that but for his counsel's deficient performance, the result of the proceedings would have been different. *See id*. To establish the second prong, a "defendant [who has pleaded guilty] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Petitioner's claim that his trial counsel was deficient fails. Petitioner alleges that his trial counsel did not investigate sufficiently the charges against him, did not spend adequate time discussing the case with him, and failed to file a timely appeal. (Paper 155, at 5-6). Petitioner's claims are undermined by his testimony at his re-arraignment. During his plea colloquy, the court discussed Petitioner's interactions with his trial counsel with him. Petitioner informed the court that his trial counsel and he had reviewed the plea agreement "at least about 4, 5 times, just to go over it, make sure that my head is straight on what I'm

12

pleading for."  (Paper 172, Ex. B, Re-arraignment/Guilty Plea Trans., at 21).  Petitioner also responded affirmatively when the court asked him if his trial counsel spent sufficient time discussing the case with him as well as to questions about whether he was satisfied with his counsel's performance and whether his counsel had answered all of his questions.  (*Id.* at 21).

Petitioner's claim that trial counsel failed to obtain a lab report which might have shown that one of his illicit transactions involved less than 5 grams of cocaine also fails because Petitioner's plea agreement acknowledged that the particular transaction involved 5 or more grams and because Petitioner conceded that between 50 and 150 grams of cocaine base were involved in his overall distribution activities.  (Paper 172, Ex. A, Plea Agreement ¶ 6).  Further, Petitioner has provided no evidence in support of his claim that a lab report would show that less than 5 grams of cocaine were involved.  Petitioner's mere allegation of a factual dispute with the sworn testimony he offered in his plea proceeding without any supporting specifics is subject to dismissal because of the strong presumption of validity provided to sworn declarations in open court.  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Petitioner has not shown any prejudice as a result of his trial counsel's performance.  While Petitioner alleges that his trial counsel failed to file a timely appeal, Petitioner was

13

ultimately permitted to file the appeal.  Further, Petitioner waived his right to appeal when he entered his plea agreement with the government (paper 172, Ex. A, Plea Agreement, at 5-6) and a knowing and intelligent waiver of the right to appeal is enforceable when it is confirmed at a Rule 11 hearing, as here. *United States v. Attar*, 38 F.3d 727, 731-732 (4th Cir. 1994). Accordingly, even if Petitioner's counsel was deficient in not filing an appeal, Petitioner cannot show prejudice as a result.

Similarly, Petitioner's claim that his appellate counsel was deficient has not been established.  Petitioner asserts that he was never interviewed by his appellate counsel, that his appellate counsel never ordered his sentencing transcript, and that he never received any copies of papers from his appellate counsel concerning his appeal.  (Paper 155, at 6).  The record establishes that Petitioner's appellate counsel did order the sentencing transcript, and indeed, eventually provided a copy of it to Petitioner.  (Paper 172, Ex. H1).  Further, the record demonstrates that appellate counsel took efforts to obtain Fourth Circuit review of Petitioner's conviction despite the fact that the appeal had not been noted timely and Petitioner had waived his right to appellate review.  Petitioner's appeal was not denied because of deficient performance by his counsel, but rather because he knowingly and voluntarily waived his appellate rights when he agreed to his plea at re-arraignment.  Because Petitioner has not established that he

received deficient representation and has not established that he was prejudiced by his counsels' performance, his third and fourth claims fail.

## V. CONCLUSION

For the foregoing reasons, Petitioner's motion under § 2255 to vacate, set aside, or correct his sentence is DENIED. A separate Order will be entered.

>                    /s/
>        DEBORAH K. CHASANOW
>        United States District Judge